E-FILED
Wednesday, 23 October, 2013  12:46:59 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

JAMES E. RODGERS,                     )
                                      )
        Petitioner,                   )
                                      )
        v.                            )        No. 11-3120
                                      )
RANDY PFISTER, Warden,                )
Pontiac Correctional Center,          )
                                      )
        Respondent.                   )


OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

This cause comes before the Court on Petitioner James E. Rodger's

Motion for Relief From Judgment (d/e 34).  Because Petitioner has not

shown extraordinary circumstances warranting relief from judgment, the

Motion is denied.

## I. BACKGROUND

In June 1996, following a bench trial, Petitioner was found guilty of

first degree murder and concealment of a homicidal death and sentenced

to natural life in prison.  The charges stemmed from the 1995 murder of Melissa Osman.  Osman was stabbed multiple times.  Christopher Connery was also convicted of the murder after a separate trial. Petitioner eventually made statements to the police admitting he witnessed the murder by Connery but denied participating in it.

Petitioner filed a direct appeal and various state court post-conviction proceedings and appeals.  See People v. Rodgers, No. 3-96-0765 (November 19, 1997) (direct appeal); People v. Rodgers, 177 Ill. 2d 582 (April 1, 1998) (Table) (denying PLA); People v. Rodgers, Kankakee County Case No. 95-CF-439 (March 29, 2001) (dismissing the postconviction petition); People v. Rodgers, No. 3-01-0314 (October 29, 2003) (affirming dismissal of the postconviction petition); People v. Rodgers, 207 Ill. 2d 624 (January 28, 2004) (Table) (denying PLA); People v. Rodgers, Kankakee County Case No. 95-CF-439 (denying Petitioner leave to file a second postconviction petition); People v. Rodgers, Kankakee County Case No. 95-CF-439 (March 17, 2008) (denying Petitioner leave to file a third postconviction petition); People

v. Rodgers, No. 3-08-0302 (March 8, 2010) (affirming denial of leave to file a third postconviction petition); People v. Rodgers, 237 Ill. 2d 582 (September 29, 2010) (Table) (denying PLA).

On May 3, 2011, Petitioner filed his Petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. On July 5, 2011, Respondent filed a Motion to Dismiss Petitioner's Petition for a Writ of Habeas Corpus as Untimely. As is relevant to the Motion for Relief From Judgment, Petitioner asserted that the one-year statute of limitations contained in 28 U.S.C. §2244(d) did not bar his Petition because he is actually innocent.

On August 24, 2011, this Court granted the Motion to Dismiss and dismissed the Petition as untimely under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) statute of limitations set forth in 28 U.S.C. § 2244(d)(1). See Opinion (d/e 20). In particular, this Court noted that the Seventh Circuit held that actual innocence cannot cure an untimely petition. Id., citing Dixon v. Gaetz, 2010 WL 3199692, at *2 (N.D. Ill. August 12, 2010) and Escamilla v. Jungwirth, 426 F.3d 868,

871 (7th Cir. 2005). This Court and the Seventh Circuit denied

Petitioner a certificate of appealability. See Opinion (d/e 20);

Mandate(d/e 32). On October 1, 2012, the United States Supreme

Court denied Petitioner's petition for a writ of certiorari. Rodgers v.

Pfister, 133 S. Ct. 263 (2012).

On July 19, 2013, Petitioner filed the Motion for Relief From

Judgment pursuant to Federal Rule of Civil Procedure 60(b)(6) at issue

herein.[1]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 60(b)(6), a court may relieve

a party from a final judgment, order, or proceeding for "any other reason

that justifies relief." Fed.R.Civ.P. 60(b)(6). A motion under Rule 60(b)

must be brought within a reasonable time. Fed.R.Civ.P. 60(c)(1). To

justify relief under Rule 60(b)(6), a party must show extraordinary

---

[1] The Court does not construe the Motion as a successive § 2254 petition. See
Gonzalez v. Crosby, 545 U.S. 524, 536 (2005) (finding that Rule 60(b)(6) motion
challenging the district court's previous ruling on the federal statute of limitations
contained in §2244(d) was not the equivalent of a successive habeas petition).

Page 4 of 18

circumstances.  See Pioneer Invest. Serv. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 393 (1993); see also Arrieta v. Battaglia, 461 F.3d 861, 865 (7th Cir. 2006) (noting that extraordinary circumstances rarely occur in the habeas context) (quotations and citations omitted). Whether to grant a motion for relief pursuant to Rule 60(b)(6) "lies within the sound discretion of the district court."  Neuberg v. Michael Reese Hosp. Found., 123 F.3d 951, 955 (7th Cir. 1997), citing Helm v. Resolution Trust Corp., 84 F.3d 874, 877 (7th Cir. 1996).

## III. ANALYSIS

In his Motion for Relief from Judgment, Petitioner argues that his case should be reopened for a merit-based review in light of the United States Supreme Court's decision on May 28, 2013 in McQuiggin v. Perkins, 133 S. Ct. 1924 (2013).  In McQuiggin, the United States Supreme Court resolved a circuit split and held "that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar  . . . or, as in this case, expiration of the statute of limitations."  McQuiggin, 133 S. Ct. at 1928.  Petitioner

argues that the "Supreme Court's clarification about untimely habeas petitions that allege a threshold showing of actual innocence amounts to an extraordinary circumstance warranting relief from this Court's previous judgment." Motion, p. 4 (d/e 34). That is, if Petitioner can demonstrate a credible claim of actual innocence, this Court can address Petitioner's otherwise time-barred claims.

Respondent objects to Petitioner's Motion on two grounds. First, Respondent argues that no extraordinary circumstances warrant reopening Petitioner's case. Second, Respondent asserts that Petitioner cannot show actual innocence because he does not have new reliable evidence that demonstrates his innocence. The Court agrees with Respondent.

## A.    Petitioner Has Not Demonstrated Extraordinary Circumstances Justifying Relief Under Rule 60(b)(6)

To obtain relief under Rule 60(b)(6), a petitioner must show "extraordinary circumstances" to warrant vacating the judgment. Legal developments after a judgment becomes final are not "extraordinary circumstances" that justify relief under Rule 60(b)(6). See Gonzalez v.

Crosby, 545 U.S. 524, 537 (2005) (finding that a change in the interpretation to the AEDPA statute of limitations did not meet the requirement of finding "extraordinary circumstances" for vacating a long final federal habeas case); see also, e.g., Hill v. Rios, 722 F.3d 937, 938 (7th Cir. 2013) (noting that "legal developments after a judgment becomes final do not qualify as extraordinary"); United States ex rel. Garibaldi v. Orleans Parish Sch. Bd., 397 F.3d 334, 339 (5th Cir. 2005) ("It is not extraordinary for the Supreme Court to deny certiorari in a court of appeals case that it ultimately overrules in the review of a later similar case.").   As stated in James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 541 (1990) "retroactivity in civil cases must be limited by the need for finality;  . . . once suit is barred by res judicata or by statutes of limitation or repose, a new rule cannot reopen the door already closed").  Therefore, the McQuiggin decision does not constitute extraordinary circumstances warranting relief from judgment.

**B.  In any Event, Petitioner Has Not Presented New, Reliable Evidence to Support an Actual Innocence Claim That Would Excuse His Untimely Habeas Claims**

Even if <u>McQuiggin</u> constituted extraordinary circumstances justifying relief under Rule 60(b)(6), Petitioner has not presented new, reliable evidence to support an actual innocence claim.

As noted above, a colorable claim of actual innocence constitutes an exception to the one-year statute of limitations in the AEDPA.  <u>But</u> <u>see</u> <u>McQuiggin</u>, 133 S. Ct. at 1928 (noting that "tenable actual-innocence gateway pleas are rare" and timeliness is still a factor in evaluating the reliability of the proof of innocence).  The <u>McQuiggin</u> Court adopted the actual innocence standard applied in <u>Schlup v. Delo</u>, 513 U.S. 298 (1995) (identifying the standard for evaluating actual innocence claim as a means of overcoming procedural default) and <u>House v. Bell</u>, 547 U.S. 518 (2006) (showing of actual innocence enabled the petitioner to proceed on his procedurally defaulted constitutional claims).

Specifically, the United States Supreme Court holds that a credible actual innocence claim requires that the petitioner "support his

allegations of constitutional error with new reliable evidence—whether it

be exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence – that was not presented at trial."  Schlup, 513

U.S. at 324; see also Hayes v. Battaglia, 403 F.3d 935, 938 (7th Cir.

2005) (stating that the evidence must be "documentary,  biological

(DNA), or other powerful evidence: perhaps some non-relative who

placed him out of the city, with credit card slips, photographs, and phone

logs to back up the claim").  "Because such evidence is obviously

unavailable in the vast majority of cases, claims of actual innocence are

rarely successful."  Schlup, 513 U.S. at 324.  If, however, a petitioner

presents such evidence, the Court reviews all of the evidence—old and

new— without regard to whether the evidence would be admissible at

trial, and determines whether it is more likely than not that "any

reasonable juror would have reasonable doubt."  House, 547 U.S. at 538,

citing Schlup, 513 U.S. at 327-28; but see Gomez v. Jaimet, 350 F.3d

673, 679 (7th Cir. 2003) (holding that under Schlup, the evidence does

not have to be newly discovered but only needs to be reliable evidence that was not presented at trial).

Here, Petitioner has not submitted new, reliable evidence to support his contention that he is actually innocent.  <u>See</u>, <u>e.g.</u>, <u>Howes v. Secretary, Dept. of Corr.</u>, 2013 WL 5606405, at *3 (M.D. Fla. October 11, 2013) (dismissing habeas petition as time barred where the petitioner submitted no reliable new evidence to support his contention that he is actually innocent).  Petitioner asserts that the new evidence shows that (1) the prosecutor introduced false evidence about the stab wound interpretations, which the Court interprets as a claim that the victim was stabbed with only one knife, not two; (2) the blood splatter/stain evidence was never subjected to testing and evaluation, which the Court interprets as a claim that new testing of the blood splatter/stain evidence would show that Petitioner was not in close proximity to the victim; and (3) the poetry writings admitted at the bench trial were incomplete and used out of context.

Petitioner first appears to argue that the victim was stabbed with only one knife, not two.  At Petitioner's bench trial, Dr. Joseph Sapala, who performed the autopsy on the victim, testified that some of the stab wounds were consistent with a single-edged knife and some were consistent with a double-edged knife.   He also testified that the single-edged and double-edged knives found in Connery's car (one under the driver's seat and one under the passenger seat) were consistent with the stab wounds.  See Bench Trial Transcript p. 214 (d/e 36-2) (sternum wound consistent with the single-edged knife found in Connery's car); p. 215 (wound patterns on shirt showed both single-edged pattern and double-edged pattern); p. 216 (double-edged patterns consistent with the double-edged knife found in Connery's car).  Evidence consistent with the victim's DNA was found on the single-edged knife.

In support of his Motion for Relief From Judgment, Petitioner points to the following evidence to show that the prosecution originally intended to proceed on the theory that only one knife was used to kill the victim: (1) the July 18, 1995 autopsy report, which does not contain

any description about the type of knife that might have caused the stab wounds (d/e 1-2, p. 12-14); (2) a December 14, 1995 forensic report (d/e 1-2, p. 10-11), noting 32 stab holes on the victim's shirt, 15 of which appear to have been made with a single-edged knife, and further noting that the holes in the shirt could have been made by Exhibit #7 (the single-edged knife found in Connery's car); and (3) transcripts from Connery's March 12, 1996 plea agreement hearing wherein the prosecution gave a factual basis that both defendants stabbed the victim with the same knife (d/e 1-1, p. 22). According to Petitioner, shortly before trial, and after Connery was no longer willing to cooperate and testify against Petitioner, the prosecution decided to present evidence from Dr. Sapala that two knives were used. Petitioner also argues that Dr. Sapala did not follow the proper "medicolegal" autopsy protocol. See, e.g. Declaration at ¶ 17 (d/e 8, p. 5).

The "evidence" Petitioner now points to, however, does not support an actual innocence claim. The documents cited do not suggest or indicate that only single-edged knife wounds were found. Therefore,

Petitioner's purported claim that the stab wounds were all made by a single-edged knife is speculative.  <u>See</u>, <u>e.g.</u>, <u>Cummings v. Dovey</u>, 2008 WL 4664975, at *5 (C.D. Cal. 2008) (finding that claim based on the assertion that DNA testing that had yet to be performed would have revealed another culprit was speculative and did constitute the "reliable new evidence" needed to support an actual innocence claim).

Petitioner also points to email correspondence with Dean Wideman, a forensic scientist, to support Petitioner's contention that the blood splatter/stain evidence admitted at trial had never been subjected to testing and evaluation methods accepted by the scientific community or the courts.  At trial, Kevin Lumley, a forensic biologist, testified as an expert in the area of blood splatter.  Lumney characterized the blood on the right knee of jeans found in Petitioner's backpack as "probable blood splatter."[2]  Bench Trial Transcript p. 279-281 (d/e 36-3).  Other

---

[2] Lumney defined "blood splatter: as a type of blood staining indicative of the blood having traveled through the air before impacting the object while, in contrast, a "contact stain" is one that results from contacting a bloody source.  Bench Trial Transcript, pp. 279-281 (d/e 36-3).

testimony indicated the blood was consistent with the victim's blood profile.  <u>See</u> Bench Trial Transcript, Forensic Scientist Kristin Boster Testimony p. 339 (d/e 36-3).

Lumney further testified that the blood splatter/stains were circular or nearly circular in shape, which indicated the blood traveled perpendicular to the jeans before it hit them.  Bench Trial Transcript, p. 280 (d/e 36-3).  Lumney testified on cross-examination that he could not say how close or how far the jeans were from the blood when the blood splatter occurred.  <u>Id.</u> at p. 294.

The evidence submitted by Petitioner includes a November 10, 2004 email asking Wideman whether "there is any way to determine the distance from the source of the blood to the blue jeans?"  (d/e 1-2, p. 16).  In response, Wideman indicated it would be difficult, "although a general range/estimate of distance may be possible."  (d/e 1-2, p. 17).  Wideman also indicated the factors involved in the analysis of bloodstains, including the force that caused the blood to become airborne, the stain size, shape, directionality, spatial location/arrangement, and angle of

impact, and the movement of the individuals at the scene.  Wideman did

not examine the blood splatter/stain in question.

The Court fails to see how this "new" evidence supports Petitioner's

claim of actual innocence.  At most, Petitioner attempts to call into

question the sufficiency of the evidence produced at trial.  <u>See</u>, <u>e.g.</u>,

<u>Thomas v. Pollard</u>, 2007 WL 2463292, at * 7 (E.D. Wis. August 27,

2007) (stating that "[e]vidence which merely casts doubt on the

credibility of witnesses or challenges the strength of circumstantial

evidence" is insufficient to meet burden of showing evidence of actual

innocence); <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998)

("'[A]ctual innocence' means factual innocence, not mere legal

insufficiency").

The third piece of evidence Petitioner points to is his Declaration

(d/e 8, p. 2, ¶ 22), in which Petitioner states that his poetry writings used

at trial were incomplete and taken out of context.  In his Declaration,

Petitioner states that he told his trial attorney that the poetry writings

were incomplete and being taken out of context, that the July 14 poem

did not contain his signature like the rest of the poems did, and that many of his poems advocated non-violent themes. Petitioner argues that if this new evidence had been brought to the trial court's attention, it would have provided reasonable doubt.

This evidence is not new, reliable evidence that shows it is more likely than not that no reasonable juror would have convicted him. Notably, at the bench trial, on cross-examination of Detective Derek Ryan, defense counsel elicited testimony that there was other poetry found and some of the other poetry mentioned Jesus, love, and hope. Bench Trial Transcript  p. 611(d/e 36-5). Therefore, some of this evidence was presented at trial.

Moreover, even considering all of the evidence, old and new, admissible and inadmissible, as well as the evidence to which Petitioner points, Petitioner has not shown it is more likely than not that no reasonable juror would have convicted Petitioner had this evidence been presented. See Response, p. 9-11 (d/e 36) (detailing the evidence

presented at the bench trial); <u>see also</u> Bench Trial Transcript (d/e 36-1, 36-2, 36-3, 36-4, 36-5).

In sum, Petitioner's claims are not proper claims of "actual innocence."  Petitioner has presented no basis for the Court to vacate its earlier decision.  <u>See</u> <u>Free v. Copenhaver</u>, 2013 WL 3934029, at *2 (E.D. Cal. July 29, 2013) (denying Rule 60(b) motion to vacate denial of habeas petition where the petitioner's claims were not proper claims of actual innocence; most of the evidence was available years before the petition was filed and "substantial delay in presenting this claim does affect its credibility"); <u>see also</u> <u>Bargeron v. Secretary, Dept. of Corr.</u>, 2013 WL 5532674, at *3 (M.D. Fla. October 7, 2013) (finding the habeas petition untimely; petitioner did not support his allegation of actual innocence with sufficient reliable evidence or demonstrate he was factually innocent); <u>Adkins v. Cartledge</u>, 2013 WL 4459529, at *4, 17 (D. S.C. August 16, 2013) (finding the petitioner's actual innocence claim was insufficient to excuse noncompliance with the limitations period in the AEDPA where the petitioner did not present any evidence

not known at the time of trial, such as DNA evidence pointing to another person or a sufficiently-corroborated recantation; the "new evidence" was the opinion of a crime scene investigator that the crime scene did not support the testimony of the state's key witness and was largely cumulative of the evidence and argument presented at trial).

Finally, to the extent a certificate-of-appealability ruling is necessary, the Court denies a certificate of appealability.  This Court concludes that jurists of reason would not find it debatable whether Petitioner's case should be reopened.

## IV. CONCLUSION

For the reasons stated, Petitioner's Motion for Relief from Judgment (d/e 34) is DENIED.  A certificate of appealability is also DENIED.

ENTER: October 22, 2013

FOR THE COURT:

　　　s/Sue E Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE

Page 18 of 18